AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Eastern District of North Carolina

FILED
APR 0 7 2023
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| United States of America | ) |
|---|---|
| v. | ) Case No. 5:23-mj-1373-RN |
| Brandon HINTON | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **January 13, 2023** in the county of **Wake** in the **Eastern** District of **North Carolina**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 18 U.S.C. 2. | Did knowingly and intentionally possess with intent to distribute five hundred (500) grams or more of cocaine, aiding abetting another, a Schedule II Controlled Substance, in violation of Title 21, United States Code Section 841(a)(1) and 18 United States Code Section 2. |

This criminal complaint is based on these facts:

See attached affidavit

☐ Continued on the attached sheet.

*Complainant's signature*

Matthew A. Futch, Special Agent DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 over the telephone.

Date: April 7, 2023

*Judge's signature*

City and state: Raleigh, NC

Robert T. Numbers II, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

AFFIDAVIT

1. I, Matthew Futch, a Special Agent (SA) employed by the U.S. Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn, depose and state under oath as follows:

2. I, Matthew Futch, am an investigative law enforcement officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 of the United States Code. I am a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), Raleigh District Office (RDO). Prior to the assignment at RDO, I was assigned to the Midland Resident Office (MRO). In September 2016, I received twenty weeks of training at the DEA Academy in Quantico, Virginia, to become a Special Agent. I have received extensive training pertaining to narcotic investigations and the investigation of various crimes which arise from drug trafficking activities. Prior to my employment with DEA, I was employed as a Deputy Sheriff with the Orange County Sheriff's Office (OCSO) in Orlando, Florida where I conducted investigations relating to various violent and narcotic related felony offenses. In total, I have over eight (8) years of law enforcement experience. I have attended numerous trainings dealing with drug investigations, drug identification, and drug interdiction. I have received training, both formal and informal, in all levels of drug trafficking and money laundering investigations, including but not limited to attendance in DEA's twenty week Basic Agent Training. I have received specialized training at courses through both DEA, the State of Florida, and the State of Texas relating to the investigation of money laundering, controlled substances, and firearms. In connection with my official DEA and prior law enforcement duties, I have initiated and/or participated in long term, conspiracy investigations, wiretap investigations,

and Organized Crime Drug Enforcement Task Force (OCDETF) investigations. I have directed and participated in investigations of criminal violations of federal narcotics and money laundering laws. I have received special training in the enforcement of laws concerning controlled substances as found in Title 21 of the United States Code. I have testified in state and federal judicial proceedings and prosecutions for violations of controlled substances and firearm laws, amongst other offenses. I have been recognized and testified on behalf of multiple cases as an expert witness in the field of methamphetamine distribution in the Western District of Texas by the Honorable Walter David Counts III, United States District Judge. I have been involved in the debriefing of defendants, witnesses, and informants, as well as others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds derived from drug trafficking. I have participated in numerous narcotics investigations, during the course of which I have: functioned in an undercover capacity, personally made controlled purchases and recoveries of controlled substances, conducted or participated in physical surveillance, written and executed numerous search warrants, reviewed taped conversations and the records of narcotics traffickers. I have participated in investigations involving the monitoring and recording of court authorized Title III intercepts. I know from my training and experience, as well as discussions with other experienced agents and law enforcement officers that people involved in drug trafficking frequently utilize telephones to further their illegal activities. I am familiar with the methods used by money launderers and traffickers of cocaine, methamphetamine, heroin, marijuana, and other controlled substances to conduct their business, including, but not limited to, their methods of importing and distributing narcotics, the remittance of drug proceeds back to source countries and their use of numerical codes, code words, and language to conceal the illegal nature of their transactions.

3. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from numerous discussions with experienced law enforcement officers, and detectives of the Apex Police Department, North Carolina State Bureau of Investigation, and Cary Police Department. Since this complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known by me in the investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause. Based on the facts cited in the body of this affidavit, I believe that probable cause exists that **BRANDON HINTON** did knowingly and intentionally possess with intent to distribute five hundred (500) grams or more of cocaine, aiding and abetting another, a Schedule II Controlled Substance, in violation of Title 21, United States Code Sections 841(a)(1) and 18 USC § 2..

4. Beginning on or about December 2022, DEA Raleigh District Office (RDO) and investigators with the Raleigh Police Department, Apex Police Department, and North Carolina State Bureau of Investigation began an investigation into cocaine distribution in the Raleigh, North Carolina area. During this same timeframe, a credible and reliable cooperating defendant was established, hereafter referred to as CD1. CD1 is cooperating in hopes of receiving consideration for federal charges he[1] has incurred. CD1's criminal history includes federal convictions for distribution of cocaine (July 2012). CD1's criminal history includes state convictions for possession with intent to distribute cocaine (August 2005), and conspiracy to traffic in cocaine (August 2005).

---

[1] For the purpsoes of this affidavit, confidential source and/or cooperating defendants will be referred to in the masculine context, regardless of their actual gender.

3

5. On January 11, 2023, investigators conducted a controlled purchase of cocaine from Vlasco VALDEZ-MATOS through Brandon HINTON. At approximately 1:00 PM on this date, CD1 met with controlling investigators at a predetermined meeting location where CD1 and CD1's vehicle were searched by investigators prior to this operation, yielding no contraband. CD1 was provided $3000.00 in United States Currency by investigators to conduct this purchase and was equipped with an audio and video recording device.

6. At approximately 1:25 PM, CD1 traveled to 6341 Pinhook Lane Raleigh, North Carolina at the direction of HINTON. Upon arrival, at approximately 1:32 PM, CD1 places a call to HINTON via WhatsApp and advised HINTON he has arrived.

7. At approximately 1:34 PM, a Hispanic Male, later identified as Vlasco VALDEZ-MATOS, approached CD1's vehicle and got into the front passenger seat. VALDEZ-MATOS appeared to be on the phone and asked the individual on the phone, later identified as HINTON, if this was the guy. HINTON advised yes, referring to CD1. At approximately 1:36 PM, CD1 counts out $2900.00 in United States Currency and gives it to VALDEZ-MATOS and receives approximately 4.5 ounces of powder cocaine.

8. At approximately 1:37 PM, CD1 departed the location and traveled back to a predetermined meeting location. At approximately 1:45PM, CD1 arrives at the predetermined meeting location and turns over approximately 128.64 grams of powder cocaine to investigators, hereafter labeled DEA exhibit 75. CD1 and his vehicle were searched again following this operation, yielding no contraband. Exhibit 75 was field tested with a presumptive field test for the presence of cocaine, yielding a presumptive positive result. Exhibit 75 was submitted to the North Carolina state laboratory for analysis and safekeeping, with results pending. Throughout this operation, surveillance was maintained by investigators of CD1. All aspects of this operation occurred in the Eastern District of North Carolina.

9. Following this operation, a debriefing of CD1 was conducted. CD1 corroborated the details as described above. Furthermore, CD1 stated that when VALDEZ-MATOS entered CD1's vehicle, VALDEZ-MATOS was on a facetime call with HINTON. CD1 stated VALDEZ-MATOS asked HINTON if CD1 was the person and turned the phone to CD1. HINTON advised VALDEZ-MATOS this was the person. CD1 recognized the person on the Facetime call as HINTON.

10. On January 13, 2023, investigators conducted a second controlled purchase of cocaine from Vlasco VALDEZ-MATOS through Brandon HINTON. CD1 met with controlling investigators at a predetermined meeting location where CD1 and CD1's vehicle were searched by investigators prior to this operation, yielding no contraband. CD1 was provided $21,100.00 in United States Currency by investigators to conduct this purchase and was equipped with an audio and video recording device. At approximately 11:07 AM, CD1 placed a phone call to HINTON via WhatsApp but did not receive an answer. At approximately 11:09 AM, CD1 placed a text message to HINTON via WhatsApp and asked HINTON to call. At approximately 11:10 AM, HINTON called CD1 on WhatsApp and advised he was going to call his guy (VALDEZ-MATOS) and HINTON would call CD1 back. At approximately 11:40 AM, HINTON calls CD1 again on WhatsApp and advised that VALDEZ-MATOS is ready for CD1 at the same location as the purchase of exhibit 75.

11. At approximately 12:11 PM, CD1 departs the predetermined meeting location and traveled to 6341 Pinhook Lane Raleigh, North Carolina. At approximately 12:21 PM, CD1 sent a text message to HINTON via WhatsApp and advised HINTON he was outside.

12. At approximately 12:26 PM, VALDEZ-MATOS was observed walking through the parking lot of 6341 Pinhook Lane Raleigh, North Carolina carrying a grocery bag. VALDEZ-MATOS walked up to CD1's vehicle. CD1 exits the vehicle and walks into apartment 106 at this address. At approximately 12:37 PM, CD1 exits the building and returns to his vehicle.

13. At approximately 12:48 PM, CD1 arrives at the predetermined meeting location and turns over approximately 881.0 grams of powder cocaine to investigators, hereafter labeled DEA exhibit 76. CD1 and his vehicle were searched again following this operation, yielding no contraband. Exhibit 76 was field tested with a presumptive field test for the presence of cocaine, yielding a presumptive positive result. Exhibit 76 was submitted to the North Carolina state laboratory for analysis and safekeeping, with results pending. Throughout this operation, surveillance was maintained by investigators of CD1. All aspects of this operation occurred in the Eastern District of North Carolina. Following this operation, a debriefing of CD1 was conducted. CD1 corroborated the details as described above.

14. On April 4, 2023, investigators conducted a traffic stop on HINTON at 1708 East Williams Street Apex, North Carolina. As a result of this traffic stop, HINTON was placed under arrest and transported to the Apex Police Department for interview.

15. Upon arrival at the Apex Police Department, Task Force Officer (TFO) Matthew Cullen and Apex Police Department Detective Christopher Lee Burns read HINTON his Miranda Warning from an Apex Police Department Miranda form. HINTON waived his rights and provided a statement to investigators.

16. HINTON advised investigators that he knew why he was in custody. HINTON advised that investigators had him for 1000 grams of cocaine because he helped a friend. HINTON specifically stated he helped a male HINTON knows as "Los" obtain cocaine from a male HINTON knows as "Tons". HINTON was shown a photograph of VALDEZ-MATOS which HINTON identified as "Tons". HINTON repeatedly stated throughout this interview that investigators only had him for conspiracy for 1000 grams, repeatedly indicating that he never touched the drugs and simply answered a call from a friend and put people in contact with each other.

6

17. Based on my training, expertise and experience, I believe that probable cause exists that **BRANDON HINTON** did knowingly and intentionally possess with intent to distribute five hundred (500) grams or more of cocaine, aiding and abetting another, a Schedule II Controlled Substance, in violation of Title 21, United States Code Sections 841(a)(1) and 18 USC § 2.

Matthew A. Futch
Special Agent
Drug Enforcement Administration

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: April 7, 2023

Robert T. Numbers, II
United States Magistrate Judge